The Surrogate.
The testator was twice married, and left issue of each marriage. After the bequest of his library and furniture, he authorizes, by his will, the sale of all his estate, real and personal, and directs one-third of the proceeds to be invested for the benefit of his wife during life, in lieu of dower. He then gave to each of his children five thousand dollars a-piece, and to those who were under age, two thousand dollars additional on attaining majority. The legacies to four of the children were absolute ; six were placed in trust till the legatees reached the age of thirty years, and that given to Jacob S. Arcularius was placed in trust during his life, and on his decease made payable to “ his right heirs.” He also provided that in case any of his children by his first wife should depart this life before his decease, without issue, that share should survive to the other issue of his first wife; and a similar provision was made in respect to the decease of children by the second wife.
It appears to have been the testator’s custom to give each of his children, on coming of age, the sum of two thousand dollars. In view of that fact, it is obvious that so far the will is exactly equal, treating each child exactly alike in respect to the amounts bequeathed.
The residue of his estate was disposed of in the following manner: “I give, devise, and bequeath all the rest, residue, and remainder of my estate to my children by my present wife Phebe, together with the share of my estate set apart for my said wife during her natural life, upon her decease, equally to be divided among them.” Jacob S. Arcularius was one of the testator’s children by his wife Phebe; he died shortly after the testator’s decease; but it is insisted that it was not intended he should have any benefit under this residuary clause, and I am asked to construe the clause so as to exclude him.
*73 The first ground urged is, that the testator having placed Jacob’s legacy in trust during his life, he could not have intended to have given him an absolute share in the residue. Such an argument is very plainly satisfied by referring to the express words of the will. Besides, it is not an uncommon thing for a testator, after having secured by trust a sufficient sum for the support of a child for life, to leave the same legatee a portion at his absolute disposal. A bequest, by way of trust for life is not at all repugnant to a further bequest absolutely. It might lead to the inquiry in the present case, why the gift of the residue was not placed in trust as well as the legacy of five thousand dollars; but the same inquiry would be quite as pertinent in respect to six other legatees, whose bequests are secured by trust till the legatees attain the age of thirty years. The answer to all such suggestions is the will itself and the clear meaning of its language ; and where the terms are not ambiguous, resort cannot be had to extrinsic evidence to raise doubts as to the testator’s intention, in the face of his express testamentary provisions. (Wigram on Extrinsic Evidence, pp. 7, 8). Such evidence may be received to determine whether the words of the will, with reference to the facts, admit of being construed in their primary sense; but that being determined, and no ambiguity existing, the court cannot speculate about the testator’s intention in opposition to his will, as written.
On the face of the will I see no sign of ambiguity. The testator makes all his children equal, with the exceptions already noticed, giving them five thousand dollars a-piece— and forgiving them all advances—and then the entire residue is given to the children by his second wife, including her one-third on her decease. I do not see how it could be pretended with any show of reason, if the case depended on the will alone, to exclude Jacob from the gift of the residue. But a provision in the codicil is invoked in aid of this effort. By the third clause of the codicil, the testator directs the five thousand dollars placed in trust for Jacob, to be paid on his decease to his issue; but if he die without issue, one thousand *74 dollars to be paid to his widow, and “ the remaining four thousand dollars to sink into the residuum” of his estate. It is urged that this clause shows the testator did not intend to give a share in this residuum to Jacob, because he here provides for the increase of that residuum out of the legacy in trust for Jacob, after his death without issue. The idea is, that a gift in remainder to a life-tenant of a share in a fund in which he has the life interest, involves an inconsistency— inasmuch as it is the gift of something to be paid after his decease. That point was presented in the case of Sweet vs. Chase, 2 Comstocks Rep., p. 73, where the testator gave his wife the rents of certain real estate, and a legacy of four hundred dollars, to be paid out of the proceeds of the same property when sold, but authorized a sale of the land only after his wife’s decease. The court saw no incongruity between the provisions, and recognized the validity of a legacy to be paid after the legatee’s death. The utmost that could reasonably be claimed from the clause of the codicil now under consideration, is a doubt as to the testator’s intention, that Jacob should share in the remainder, after his life estate, in the sum of five thousand dollars; and yet that doubt would seem to be removed by the ruling of the Court of Appeals, in the case above cited. But to hold, because of a doubt as to the right to share in a particular portion of the residue, that the legatee is to be excluded from other parts of the residuary estate, notwithstanding the gift is made in terms as explicit and unequivocal as possible, would violate some of the best established rules of construction. Effect should be given to every part of a will; and no portion is to be disregarded, unless entirely repugnant to another portion. The intention is to be gathered from the entire instrument, and if the several clauses can be harmonized, none of them will be rejected. It often happens that the effect of a subsequent clause has not carefully been considered with reference to previous dispositions. It might have been in the present case, if the testator’s attention had been directed to the question, whether he intended Jacob to share in the four thousand *75 dollars which he provided should sink into the residuum, that he would have said “ no, let it go to his brothers and sisters.” But there can be no pretence that he did not know who his children were, and that by its own terms the residuary clause is just as applicable to Jacob as to any other of the decedent’s children by his second wife. And that being the case, Jacob is not to be excluded from that clause, because of doubts and speculations as to the meaning of another clause. That which is clear and express must of necessity overrule the uncertain and ambiguous. Were there ambiguity, therefore, in the codicil, it would not overturn a provision in the will entirely unambiguous. The rule is precisely the converse. A certain and definite gift is not nugatory, because of a subsequent provision of uncertain signification. It is a settled principle of construction not to disturb a prior gift any further than is absolutely necessary to give effect to a posterior qualifying disposition. (1 Jarman on Wills, 161, 165, 414.) There does not therefore seem to be any reasonable ground, in respect to the will in controversy, for questioning the right of Jacob to share in the residuary estate of his father, except as to the four thousand dollars, part of his legacy for life; and even as to that sum, the decision of the Court of Appeals, in Sweet vs. Chase, apparently removes all doubt.
It is insisted, however, that by Jacob’s decease before his mother, his interest in the residuary estate ceased, or rather survived to the benefit of such of the other children as should survive the mother. The residuary clause runs in this way: “I give, devise, and bequeath all the rest, residue, and remainder of my estate to my children by my present wife, Phoebe.” This, no doubt, gives a present vested legacy in the whole residue. But he continues, “ together with the share of my estate set apart for my said wife during her natural life, upon her decease; equally to be divided among them.” The argument is, that the words “ upon her decease” qualify the whole residuary disposition, so that none of the residue is given until the decease of the widow; she meanwhile taking a life-estate by *76 way of implication. I can find no stronger reason upon which to base this violent conclusion, than the appearance of a semi-colon in the original will after the words “ upon her deceaseand it is almost needless to say that the construction of wills does not depend upon punctuation. I think the words “ upon her decease” do not make the gift of the remainder in the one-third bequeathed to the wife for life, conditional, and much less therefore is the gift of the rest of the residuary estate conditional. If that proposition should be entertained. in all its breadth, it would apply to the other children, in case of their decease before the widow, as well as to Jacob. But I am of opinion, in the first place, that the words “ upon her decease” qualify only the gift of the one-third in which the widow had a life-estate ; and in the second place that those words do not establish a conditional legacy; (Van Wyck vs. Bloodgood, 1 Bradford's Rep., 154); that they only affect the time of payment or distribution, not the time of vesting; and in the third place, that the term “ equally to be divided among them” establishes a tenancy in common. Inasmuch, therefore, as the gift of the general residue is immediate, and it is only the payment or distribution of the one-third invested for the widow for life that is postponed till her decease, the children by the second wife, including Jacob, as represented by his administrator, are entitled to an account and distribution.
I have not alluded to the facts stated in respect to Jacob’s insolvency, and habits, because I do not think the case admits of that class of extrinsic evidence. It is obvious, however, that those circumstances would rather have led to placing Jacob’s share of the residue under the same trusts as the legacy of five thousand dollars, than to excluding him entirely from the share. But the testator did not do that, and I cannot do it for him. There seems to be no indication of an intention to place Jacob on a footing with the children of the first wife. On the contrary, the twenty-first clause proves most distinctly that he intended to keep all the children by the first wife in a separate class from those by the *77 second wife. Nor is there any ground for limiting the sense of the word “ children” in the residuary clause to that of “minors.” The twentieth clause shows the testator very well knew the difference between “ children” and “ infant legatees;” and the twenty-first clause, in providing for survivorship between the children of his first wife, among themselves, and the “ children” of his second wife, among themselves, totally forbids the idea, that by “ children” he intended minors only; for the children by the first wife were all of age. Perceiving, therefore, no reason for varying the natural reading and interpretation of the residuary clause, I must order an account and distribution. The distribution will be made without regard to the advances made to Jacob —the testator expressly declaring in the second clause of the codicil, that it was his will to “ forgive” him his debt on his acceptance, of the legacy of five thousand dollars, contained in the thirteenth clause of the will; and under the circumstances, the law will presume his acceptance. His death before the time the legacy was payable; the legacy being favorable; the absence of any proof of a refusal; the payment by the executors of one thousand dollars to his widow, and the present demand made by the administrator, are sufficient grounds for concluding a legal acceptance.